LAND, J.
The defendant was indicted for murder, found guilty of manslaughter, and was sentenced to the penitentiary for the term of ten years.
Defendant has appealed, and relies for reversal on several bills of exception.
[1] Defendant on the trial introduced several witnesses to sustain his plea of self-defense. The bills of exception show that counsel for the state in-his cross-examination of the defense witnesses asked questions as follows :
“Q. Do you not know as a matter of fact that your brother provoked this difficulty and continued it to the end?
“(Objected to by the defendant, on the ground that, the question was an attempt to elicit the opinion of the witness on a matter for the jury to determine. Objection overruled.)”
The same witness was cross-examined as to whether certain state witnesses who had testified to certain facts were mistaken. The witness answered:
“Xes, sir; they were mistaken.”
The saíne witness was further cross-examined as follows:
“Q. Why is it that these disinterested witnesses should be mistaken, and you, his brother, should not be mistaken?”
“Q. Have not your father and brothers and other members of the family joined together and conspired together for the purpose of defeating justice in this case?”
“Q. Can you explain on any other ground why it is that in your testimony the said witnesses were mistaken, and you were telling the truth?”
The same objections were made and overruled; and the witness answered that the state witnesses “did not want to tell the truth,” and there was no such conspiracy.
The same witness was asked on cross-examination:
“Then, if Mrs. Miller, Miss Blanche Miller, and Virginia Miller all say that Mrs. Miller was on the way bringing the gun to her. husband when her husband was shot, they were all mistaken.” “If Mrs. Miller says she was about 50 yards from Mr. Miller when he was shot by your brother, is that also a mistake?”
The same objections to the questions were made and overruled; and the witness answered that they were mistaken.
Another cross-question to the same witness was as follows:
“Do you know, as a matter of fact, that Miller would not pull out a pocketknife to use on this accused when this person was standing three or four feet in front of him with a double-barrel shotgun loaded with buckshot?”
Same objections and same ruling. The witness answered:
“He did not load it until Miller raised his gun on him. I saw him load it.”
Another brother of the defendant was asked the following cross-question:
“There were at least four or five witnesses to testify that your brother shot two shots from east to west before any shot was fired by Miller. Were these witnesses mistaken?”
*369 Same objections and same ruling. The ■ witness answered:
“Yes, sir; they were mistaken.”
In State v. Williams, 111 La. 179, 35 South. 505, objection was made by the state to the following question:
“If Hutch, your brother, who says you and he came into the room together, testifies that Kesie was sitting down on the girl, bumping her head on the floor, he is mistaken?”
The objection was sustained by the trial judge, for the following reasons:
“The witness can be asked to detail facts as they were observed by him, and it is the duty of the jury to determine which of the witnesses * * * before them is mistaken. To permit this witness to decide this issue of fact is to rob the jury of its province. It is the duty of the jury to reconcile the testimony of witnesses.”
This court said:
“The ruling complained of was obviously correct.”
A witness must state facts, and not impressions or opinions, leaving to the jury to draw their own inferences from the facts. State v. Hamilton, 124 La. 132, 49 South. 1004, 18 Ann. Cas. 981.
In State v. Fontenot, 48 La. Ann. 286, 19 South. 113, the following question was propounded by the defendant:
“Would you believe your own brother under oath as a witness in this case for the defendant?”
Objection was made and sustained, and the ruling was affirmed by this court.
The state contends in this court that, if said rulings of the court were erroneous, the cross-questions and answers thereto worked no prejudice to the accused.
The cross-questions were objectionable in so far as they sought to elicit the opinions of the witness, and should have been ruled out. But, as the answers of the witness were all favorable to the defendant, it does not appear that he was prejudiced by the cross-questions.
[2] Another bill was taken to the ruling out of a certain cross-question propounded by the defendants’ counsel to Mrs. Miller, the widow of the deceased, as follows:
“Did you tell the priest a day or two after the killing, at the house of the priest, that you felt as if you were the cause of the death of your husband by reason of having brought him the gun at the time of the killing by Asa Higginbotham?”
The question was propounded to impeach the credibility and veracity of the witness, and to further support the plea of self-defense.
The witness answered “No,” and stated that she had spoken to the priest about a debt she owed him. Whatever Mrs. Miller told the priest was irrelevant, and therefore not admissible in evidence on the trial of the merits, and was not admissible as a contradictory statement, because the bill does not disclose that Mrs. Miller had made any statement whatever on the subject-matter.
Bills Nos. 2, 3, and 4 involve the question of opinion evidence considered supra.
[3] Bill No. 12 was taken to certain remarks made by the judge from the bench to counsel for defendant during the progress of the trial. The per curiam reads as follows:
“The expression of the court, ‘HuiTy; we have been here since last Wednesday, and we have been losing one-half of our time with evidence not material to the case,’ was to the effect that the same question had been put to this witness and several others at least a dozen times, and the remark was made, and also putting a stop to the same questions being repeated to said witnesses, and which right the court hadv and was in no way commenting on any of the facts or the evidence.”
[4] The remarks of the judge were general, and his “we” included the court and counsel on both sides. This court takes judicial notice of the practice of introducing a great deal of immaterial evidence on the trial of many criminal and civil cases. Our learned brother below expressed no opinion on any fact or the evidence in the case, or on the credibility of any witness.
Judgment affirmed.
O’NIELL, J., concurs in the decree.